**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JUN – 3 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. | |
| | ) | **4:15CR00253 ERW/SPM** |
| JAMES MATTHEW ALEXANDER a/k/a | ) | |
| James Mathew Alexander a/k/a | ) | |
| Matthew J. Alexander, and | ) | |
| LARRY CHARLES MAXWELL, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

The Grand Jury charges that:

BACKGROUND

At all times relevant to the Indictment:

1.      Matthews Manufacturing, Incorporated (hereinafter referred to as "MMI") was a defense contractor providing equipment to the United States Department of Defense (hereinafter referred to as "DoD") and the United States armed services.  MMI has served as a prime contractor for multiple United States Government contracts.  MMI's offices and sole manufacturing facility were located in the St. Louis, Missouri area.

2.      Defendant JAMES MATTHEW ALEXANDER (hereinafter referred to as "ALEXANDER") was the President of MMI.  Defendant LARRY CHARLES MAXWELL, JR., (hereinafter referred to as "MAXWELL") was the Quality Assurance Representative of MMI.  Both ALEXANDER and MAXWELL supervised and directed MMI employees in fulfilling government contracts.

3.      On or about June 2, 2010, the Defense Logistics Agency (hereinafter referred to as "DLA"), a component of DoD, awarded a contract to MMI for the construction of F414 High Pressure Turbine Module Shipping Containers.  The F414 High Pressure Turbine is a critical engine component of the F/A-18 Super Hornet aircraft.  Shock mounts are critical components utilized in the construction of F414 High Pressure Turbine Module Shipping Containers.  Each F414 High Pressure Turbine Module Shipping Container contains four (4) shock mounts.

4.      As to the shock mounts for F414 High Pressure Turbine Module Shipping Containers, the DLA contract with MMI specified and required that:

*Each shock mount shall be marked with its manufacturing cure date (month and year) permanently molded in the top of the mount material so as to be plainly visible when the mount is installed... Shock mounts shall be no older than one year old when installed in the container.*

5.      Between March 1, 2011 and April 19, 2011, MMI received 200 shock mounts for the F414 High Pressure Turbine Module Shipping Container from the manufacturer of the shock mount.  158 of the shock mounts had a cure date of February of 2011 and 42 of the shock mounts had a cure date of April of 2011.

6.      The shock mounts MMI received from the manufacturer contained a white alpha-numeric marking indicating the part number, manufacturer, and cure date.

7.      On or about May 18, 2010, the United States Government awarded a contract to MMI for the construction of 22 V-22 Conversion Actuator Containers.  A conversion actuator is a critical component which rotates the engine and rotor nacelles on the United States Marine Corps' V-22 Osprey aircraft.  Shock mounts are a critical component utilized in the construction

of V-22 Conversion Actuator Containers.  Each V-22 Conversion Actuator Container contains four (4) shock mounts.

8.      As to the shock mounts for V-22 Conversion Actuator Containers, the MMI's contact with the government specified that the shock mounts for the containers not be older than one (1) year and that each shock mount in a container must be produced on the same date to ensure structural integrity.

9.      As to the shock mounts for both the F414 High Pressure Turbine Module Shipping Container and the V-22 Conversion Actuator Containers, it was imperative the mounts met the contract specifications, including specifications regarding cure dates, in order for the containers to protect the equipment they were designed to protect.  It was imperative that the shock mounts were created and used within one year of the manufacture date due to the shelf life and daily degradation of each mount.  A piece of equipment shipped and stored in a container with improper shock mounts could be damaged as a result, and the equipment could ultimately fail in the field.  In their respective position at MMI, defendants ALEXANDER and MAXWELL directed and supervised the manufacture, shipment and certification of these containers for the United States and DoD.

SCHEME TO DEFRAUD

## COUNT 1
## MAIL FRAUD

10.      The Grand Jury fully incorporates by reference, as if fully set forth herein, paragraphs 1-9 of the Background section of this Indictment.

11.      Beginning on or about March, 2014, and continuing through February, 2015, in the Eastern District of Missouri and elsewhere, defendants,

**JAMES MATTHEW ALEXANDER**
**a/k/a James Mathew Alexander a/k/a Matthew J. Alexander, and**
**LARRY CHARLES MAXWELL, JR.,**

acting together and aiding and abetting one another, devised, intended to devise, and knowingly

participated in a scheme to defraud and obtain money from the United States, by means of

materially false and fraudulent pretenses, representations, and promises.

12.     It was part of the scheme that on one and more occasions, defendants

ALEXANDER and MAXWELL manufactured, shipped and certified, and caused to be

manufactured, shipped and certified, containers for the government that did not comply with

contract specifications in that containers manufactured by MMI were knowingly and

intentionally manufactured with out-of-date and expired shock mounts.  It was the purpose of the

scheme to defraud that defendants ALEXANDER and MAXWELL, by false pretenses,

representations and promises, would induce the United States Government to make payments to

MMI for fulfilling its contractual obligation and delivering proper and compliant containers to

the DoD and the United States armed service when, in fact, MMI had not.

13.     It was part of the scheme that on one and more occasions, defendants

ALEXANDER and MAXWELL altered, changed and removed, and caused to be altered,

changed and removed, the original white alpha-numeric marking indicating the actual cure date

of the shock mounts MMI received from the manufacturer.  Original dates were "buffed" off and

modified stamps were used to re-stamp the mounts.

14.     It was further part of the scheme that defendants ALEXANDER and MAXWELL

replaced, re-stamped, and caused others to replace and re-stamp, the actual cure date on the

shock mounts with false and forged dates indicating and misrepresenting that the shock mounts

had a cure date compliant with contract specifications.

15. It was further part of the scheme that on one and more occasions, defendants ALEXANDER and MAXWELL shipped and certified, and caused others to ship and certify, containers with the altered shock mounts bearing false and forged cure dates. As to the F414 High Pressure Turbine Module Shipping Containers, shock mounts bearing false cure dates in 2013, were manufactured, shipped and certified when, in fact, the actual cure date was from 2011. As to the V-22 Conversion Actuator Containers, false cure dates in 2014 were manufactured, shipped and certified when, in fact, the actual cure date was from 2012 and 2013.

16. Defendants ALEXANDER and MAXWELL manufactured, shipped and certified, and caused to be manufactured, shipped and certified, said containers and misrepresented the containers were as contracted to DoD and the United States armed services. Defendants ALEXANDER and MAXWELL submitted, and caused to be submitted, false certifications to DoD relative to said shipping containers and their component shock mounts through the DoD's secure web based system for electronic invoicing, receipt, and acceptance known as Wide Area Work Flow (hereinafter referred to as "WAWF"). WAWF is routinely used by DoD vendors and contractors, including MMI.

17. The Defense Contract Management Agency (hereinafter referred to as "DCMA") is the DoD component that works directly with DoD suppliers to help ensure that DoD, Federal and allied government supplies and services are delivered on time, at projected cost, and meet all performance requirements. DCMA directly contributes to the military readiness of the United States. During December of 2014, a DCMA Quality Assurance Representative (hereinafter referred to as "QAR") observed a quantity of 2011 manufactured shock mounts within the MMI St. Louis facility with altered and re-stamped cure dates. It was further part of the scheme that on or about December 16, 2014, in response to the QAR's inquiries regarding the shock mounts,

both ALEXANDER and MAXWELL denied any knowledge of dates being changed on the

observed shock mounts and thereby attempted to conceal MMI's practice of altering, changing

and forging the cure dates on shock mounts and conceal their individual involvement in said

fraudulent practice.

THE MAILING

18.    On or about November 17, 2014, in the Eastern District of Missouri and elsewhere,

**JAMES MATTHEW ALEXANDER**
**a/k/a James Mathew Alexander a/k/a Matthew J. Alexander, and**
**LARRY CHARLES MAXWELL, JR.,**

the defendants herein, having devised and intending to devise a scheme and artifice to defraud,

and to obtain money and property by means of material false and fraudulent pretenses,

representations, and promises, and for the purpose of executing this scheme to defraud and in

attempting to do so, did knowingly cause to be sent and delivered, according to the directions

thereon by a private carrier, that is FedEx Freight, a shipment from MMI in St. Louis, Missouri

to DLA Distribution in Jacksonville, Florida, with said shipment containing F414 High Pressure

Turbine Module Shipping Containers with shock mounts bearing false and forged cure dates.

In violation of Title 18, United States Code, Sections 1341 and 2.

COUNT 2
FALSE STATEMENT

The Grand Jury further charges that:

19.    The grand jury reincorporates by reference as if fully stated herein paragraphs 1-

17 of this Indictment.

20.    On or about December 16, 2014, in the Eastern District of Missouri and

elsewhere,

6

**JAMES MATTHEW ALEXANDER**
**a/k/a James Mathew Alexander a/k/a Matthew J. Alexander, and**
**LARRY CHARLES MAXWELL, JR.,**

the defendants herein, did willfully and knowingly make a material false, fictitious, and

fraudulent statement and representation in a matter within the jurisdiction of the executive

branch of the Government of the United States, to a representative of DCMA who had

discovered re-stamped shock mounts within the MMI St. Louis facility. Upon being questioned

by the DCMA representative, ALEXANDER and MAXWELL denied any knowledge of the

shock mounts being re-stamped. The statements and representations were false because

defendants ALEXANDER and MAXWELL knew the shock mounts within the MMI St. Louis

facility at that time had, in fact, been re-stamped consistent with MMI's false and fraudulent

practice of altering, removing, and changing the actual cure date of the shock mounts for the

F414 High Pressure Turbine Module Shipping Containers MMI manufactured for the United

States Government and DoD and that both ALEXANDER and MAXWELL had engaged in, and

directed others at MMI to engage in, said false and fraudulent practice.

In violation of Title 18, United States Code, Sections 1001 and 2.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.      Pursuant to Title 18, United States Code, Section 981(a)(C) and Title 28, United

States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States

Code, Section 1341 as set forth in Count One, the defendant(s) shall forfeit to the United States

of America any property, real or personal, constituting or derived from any proceeds traceable to

such violation(s).

2.      Subject to forfeiture is a sum of money equal to the total value of any property,

real or personal, constituting or derived from any proceeds traceable to such violation(s).

7

3.    If any of the property described above, as a result of any act or omission

of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided

      without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____

CHARLES S. BIRMINGHAM, #47134MO
Assistant United States Attorney

8